Filed 8/19/24  P. v. Garcia CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARIO JUNIOR GARCIA,<br><br>Defendant and Appellant. | C099025<br><br>(Super. Ct. No. 16FE015384) |

A jury found defendant Mario Junior Garcia guilty of second degree murder and found true the allegation that he personally discharged a firearm causing death.  The trial judge sentenced defendant to 15 years to life for the murder plus 25 years to life for the firearm enhancement.  During his initial appeal, another panel of this court remanded the case to the trial court to consider reducing or striking the firearm enhancement.  On remand, the trial court did not strike or reduce the enhancement based on finding that reducing or striking the 25-year-to-life enhancement would endanger public safety.

1

On appeal, defendant contends the trial court abused its discretion in finding that reducing or striking the 25-year-to-life enhancement would endanger public safety. We affirm the judgment and direct the court to amend the abstract of judgment.

FACTUAL AND PROCEDURAL BACKGROUND

As this is a resentencing case following a remand, we take the facts of the underlying crimes from our prior opinion. (*People v. Garcia* (May 6, 2022, C091451) [nonpub. opn.] (*Garcia*).)

At the time of the shooting, "defendant was 19 years old and living with his 23-year-old sister." (*Garcia*, *supra*, C091451.) The victim was his neighbor. (*Ibid*.)

Prior to the shooting, the victim and other neighbors had concerns about defendant's dangerous driving behavior in their neighborhood. Defendant drove his car very fast down the street and did "burnouts and donuts." (*Garcia*, *supra*, C091451.) The victim and other neighbors expressed concerns to defendant about his driving because small children played in front of their houses. (*Ibid*.)

Defendant also frequently held loud, well-attended parties that involved alcohol and marijuana at his home. A couple weeks before the incident, defendant held a party in July, where gunshots were fired and bullets hit the victim's house. "After the shots were heard, defendant, who was in his home, came down the stairs . . . to the first floor with a gun and said, 'No one is going to fuck with my house.' " (*Garcia*, *supra*, C091451.) The next morning, the victim and neighbors confronted defendant and expressed their concern that each of the five bullets could have hit and killed someone. (*Ibid*.)

Between the July party and the next one he held in August, defendant saw the victim several times. Defendant testified the victim said to him: " 'One more party. One more party. I be waiting for the one more party. The next time, my house ain't gonna be the one to get shot up.' " (*Garcia*, *supra*, C091451.) Defendant also testified the victim told him the victim was "waiting to use his new gun" and "defendant would have to 'pay for this shit.' " (*Ibid*.) Defendant testified these comments and others "prompted him to

2

find [the victim] on Facebook, where he saw 'a lot of violent stuff' and 'aggressive things.' " (*Ibid*.) Defendant testified he feared the victim and thought the victim was dangerous. Defendant also testified after the party when the bullets hit the victim's home, defendant "prepared for the next party by hiding his gun on top of his refrigerator." (*Ibid*.)

The shooting here happened on August 7, 2016. That night, the victim was sleeping in his house when his wife woke him up because defendant was hosting another loud party. The victim called 911 to report the party.

Defendant went and retrieved his gun from the top of his fridge. He came out of his house with his gun and walked down his driveway with a group of men towards the victim's house. The victim and three other men walked towards defendant at his house.

The victim "told defendant: 'Shut the party down. Get this shit out of here. We're tired of it.' " (*Garcia*, *supra*, C091451.) The victim's group and defendant exchanged expletives and defendant's sister yelled at the victim's group. (*Ibid*.)

Without warning, when the victim was between two and 11 feet away, defendant pulled out his gun, pointed it at the victim, and shot him three times in the chest. No one in the victim's group had a weapon or made physical contact with defendant. Witness testimony conflicts on whether a fight was imminent. The victim died from his wounds. (*Garcia*, *supra*, C091451.)

Defendant's sister testified the victim and his group were swearing at defendant's group, but defendant ignored them. She asserted the victim "lunged at defendant and defendant backed up, pulled out his gun, pointed it at [the victim], and told [him] to back up." (*Garcia*, *supra*, C091451.) She said the victim "lunged again as if to hit defendant" and then she heard a gunshot and watched defendant run away. (*Ibid*.)

Defendant claimed he heard the victim was threatening his sister, so that's when he got his gun and went outside. Defendant said he tried to defuse the situation, but the victim called him names and " became enraged and 'just went crazy and got very

3

angry.' " (*Garcia*, *supra*, C091451.) Defendant asserted the victim began to advance at him and asked, " 'What the fuck are you gonna do about it?' " (*Ibid.*) After the victim continued to advance, defendant pulled out his gun and told him to back off. The victim made a motion as if he was going to hit defendant and while defendant was backing up, defendant shot the victim three times. Defendant "testified he shot [the victim] because 'pretty much, he[ was] gonna kick [defendant's] ass." (*Ibid.*)

The prosecution argued defendant's killing the victim was not a singular instance of impulsive behavior. At trial, the prosecution showed the jury a video of defendant leading a jailhouse assault of another inmate that took place on April 14, 2018. The videotape showed "defendant and another man pull[] a fellow inmate out of his jail cell onto the second-floor walkway and immediately beg[in] to beat him while others joined in." (*Garcia*, *supra*, C091451.) At the end of the beating, defendant stood over the beaten inmate. (*Ibid.*)

On appeal, another panel of this court concluded the trial court was not aware of its discretion to impose a lesser firearm enhancement and remanded the case for resentencing. (*Garcia*, *supra*, C091451.)

On remand, the trial court held a new sentencing hearing. Defendant argued several mitigating factors suggested the court should strike the 25-year enhancement: He was under the age of 26 at the time of the crime; the fact the enhancement results in a sentence of 20 years or more, weighed greatly in favor of dismissing the enhancement; and he had no previous criminal record. (Pen. Code,[1] § 1385, subd. (c)(2).) Defendant claimed he had zero rule violations and no misconduct in three and a half years while in prison. Defendant further argued he had consistently "engage[d] in self-help courses, including substance abuse recovery courses."

---

[1]     Further undesignated statutory references are to the Penal Code.

Defendant noted that he would still be serving a 15-year-to-life sentence even if the trial court struck the firearm enhancement, and that the parole board could deny his release from custody if defendant still presented a danger to the community at the conclusion of the first 15 years of his incarceration.

In addition, defendant argued the current offenses were connected to trauma he suffered as a child. Defendant's counsel informed the trial court defendant's father was murdered when defendant was seven years old, and his mother, who was addicted to methamphetamine, physically and psychologically abused defendant until child protective services removed defendant from his home.

The prosecution responded defendant increased his level of violence when the victim asked him to stop the loud parties, and showed no remorse for his actions. The prosecution further argued defendant's lack of remorse was reaffirmed by the video that showed defendant leading a jailhouse assault of another inmate.

Defendant's arguments did not persuade the trial court. The trial judge credited evidence in the record that the original trial judge found defendant's expression of remorse to be disingenuous. The trial court found no connection between the murder and defendant's childhood trauma, but for argument's sake accepted there was a connection and gave great weight to his childhood trauma. The trial court found defendant's conduct both before and during the murder and his lack of remorse since demonstrated it would not be in the interest of justice to strike the enhancement. The court found defendant to be violent and would likely reoffend in a dangerous and violent manner and thus presented a danger to public safety if the trial court struck the enhancement and reduced defendant's sentence. The trial court found defendant acted callously and with disregard for the victim's family, and other innocent bystanders could have been injured or killed by defendant's action. As a result, the trial court chose not to strike or reduce the enhancement but instead reimposed the original sentence of 15 years to life in prison for the murder plus 25 years to life for the firearm enhancement.

5

DISCUSSION

Defendant contends the trial court abused its discretion in declining to strike or reduce the firearm enhancement. Specifically, defendant argues: (1) the trial court's finding that dismissal would endanger public safety was irrational; and (2) the trial court did not properly weigh the mitigating circumstances that favored dismissal of the enhancement. We disagree.

Section 1385, subdivision (c)(1), as amended, provides: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Section 1385, subdivision (c)(2) states, "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

The relevant mitigating circumstances raised by this case are set forth in section 1385, subdivision (c)(2)(C) and (E). Under section 1385, subdivision (c)(2)(C) the trial court must consider whether "[t]he application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed." Under section 1385, subdivision (c)(2)(E), the court must consider whether "[t]he current offense is connected to prior victimization or childhood trauma."

I

*Public Safety*

Defendant argues the trial court's finding that dismissing the enhancement would result in a danger to society is irrational and arbitrary. We disagree.

6

We review the trial court's decision not to strike or reduce the enhancement for abuse of discretion.  (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*).)  " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)  The court's " ' "decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*Id.* at p. 377.)

Under section 1385, subdivision (c)(2), "if the court finds that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances." (*Mendoza*, *supra*, 88 Cal.App.5th at p. 296.)  In *Mendoza*, "[t]he trial court determined that dismissal of the [defendant's] enhancement would result in a sentence of less than six years in prison, which would [have] require[d] [the defendant's] immediate release." (*Id.* at p. 299.)  The trial "court considered that [the defendant] discharged a gun with victims present in a residence during a home invasion robbery, and the court found that the circumstances involved 'incredibly harmful and dangerous conduct.'  The court explained that a person who 'commit[s] this type of an offense is a serious threat to society and a relatively long prison sentence is necessary to protect the public and keep the defendant away from the public and to provide time for the defendant to become rehabilitated.' " (*Ibid*.)  The appellate court concluded the trial court's finding the dismissal of the enhancement would endanger public safety was not " 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Ibid*.)

Here, defendant's conduct before, during, and after the murder demonstrated to the trial court releasing him earlier would endanger public safety.  Before the murder, defendant demonstrated his disregard for the safety of others by racing around the

7

neighborhood in his car endangering the children that played in front of their houses. He also hosted a large party in July 2016, where drugs and alcohol were present and gunshots were fired. Bullets hit the victim's house. Defendant came down his stairs with a gun and was quoted saying, " 'No one is going to fuck with my house.' " (*Garcia*, *supra*, C091451.)

Defendant prepared for violence prior to the day of the murder by staging a gun on his refrigerator. When the discord erupted, he took his gun, went outside, and confronted the victim with a group of people. When things got heated, defendant shot the victim three times in the chest without warning even though there were partygoers surrounding defendant and the victim. Defendant's actions during the murder demonstrated he acted callously and deliberately without regard for the victim's family and many other innocent bystanders that could have been injured or killed by his actions.

After the murder, defendant demonstrated his continued danger to society. First, he led a jailhouse assault in April 2018. Further, defendant lacked any remorse about the murder. Based on these facts, the trial court's explicit conclusion defendant was a dangerous person and releasing him would endanger society is not an abuse of discretion.

To the extent defendant argues the trial court's decision to impose the enhancement was irrational and arbitrary because defendant is already serving a life sentence independent of the enhancement and would not be released until a determination is made by the parole board in the future, we disagree.

As to the first point, time matters. Beyond his current dangerousness to society, the trial court also had to examine whether defendant would be a danger when he may be released in the future when determining whether resentencing poses an unreasonable risk of danger. (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 228.)

A currently dangerous defendant who will be released from prison within a short timeframe is properly found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison

until he or she is elderly. (See *Mendoza*, *supra*, 88 Cal.App.5th at p. 299 [affirming trial court's finding of a danger to the public safety under § 1385, subd. (c)(2) where "dismissal of the enhancement would result in a sentence of less than six years in prison, which would require [the defendant's] immediate release"].) "Further, an inquiry into whether public safety will be endangered by the dismissal of an enhancement for a defendant serving a lengthy indeterminate sentence should also take into account that the defendant's release from prison is contingent on review by the Board of Parole Hearings (and for murder convictions, by the Governor), who will have the opportunity to assess the defendant's dangerousness at that time. (§§ 3041, 3041.2; Cal. Const., art. V, § 8.) That future review will act as a safety valve against a release that would endanger the public and is relevant to a trial court's analysis of whether the dismissal of an enhancement imposed on a defendant serving an indeterminate prison term will endanger public safety." (*People v. Gonzalez*, *supra*, 103 Cal.App.5th at p. 228.) In this analysis, the trial court should consider the date the defendant could be released and the fact that the release would be subject to a review by the Board of Parole Hearings and the Governor, however, the trial court must not completely defer to that future decision by the board or the Governor but must render its own reasoned conclusion. (*Id*. at p. 228 & fn. 10.)

Here, defendant is not simply serving a single life term. He is serving a 15-year-to-life term and a consecutive 25-year-to-life term. If the trial court struck the enhancement, defendant would become eligible for parole after 15 years, as opposed to after 25 years with the enhancement imposed. (See § 3051, subds. (a)(2)(B), (b)(2) & (b)(3); *People v. Franklin* (2016) 63 Cal.4th 261, 277 [requiring the parole board to hold a hearing 25 years after the controlling sentence for youthful offenders].) Given defendant's dangerous conduct before and during the murder, his lack of remorse, and his actions while incarcerated, it was not unreasonable for the trial court to find this

9

defendant would be a danger if considered for and released during his late thirties as opposed to his late forties.

Moreover, while the trial court had to consider the parole board's decision in rendering its decision, the trial court could not and should not have deferred to that determination in making its own decision. (*People v. Gonzalez*, *supra*, 103 Cal.App.5th at p. 228 & fn. 10.) The trial court stated: "The [c]ourt believes that . . . [d]efendant is violent and would likely re-offend in a dangerous and violent manner, injuring other victims and presenting a danger to public safety if the sentence was reduced. . . . [¶] [D]efendant acted callously and deliberately without regard for the victim's family or the many other innocent bystanders that could have been injured or killed by his action." Implicit in that ruling is the trial court's finding that defendant would be a danger to society if he were potentially to be released 10 years before the existing sentence if the court were to strike or reduce the enhancement. The trial court's finding defendant is violent and would likely reoffend in a dangerous and violent manner, injuring other victims and presenting a danger to public safety if the sentence was reduced, was supported by the record. Its further finding based on those facts that dismissing the enhancement would endanger public safety is neither irrational nor arbitrary.[2] We conclude the trial court did not abuse its discretion.

III

*Abstract Of Judgment*

The People assert the trial court should prepare a new abstract of judgment to properly reflect the resentencing of defendant by the trial court, including the new date of

---

[2]     We further reject defendant's argument the trial court did not properly weigh the existing mitigating factors. Because the trial court did not abuse its discretion in finding that the dismissal of the enhancement would endanger public safety, the trial court did not need to consider the listed mitigating circumstances. (*Mendoza*, *supra*, 88 Cal.App.5th at p. 296.)

imposition (July 7, 2023), the new sentencing judge, and defense counsel. We agree and will direct the clerk to prepare an amended abstract of judgment to accurately reflect the oral judgment of the trial court. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

## DISPOSITION

The judgment is affirmed. The clerk of the trial court is directed to prepare an amended abstract of judgment to reflect the July 7, 2023 imposition of the sentence, the new sentencing judge, and defendant's counsel, and send a certified copy of the abstract of judgment to the Department of Corrections and Rehabilitation.


/s/
ROBIE, Acting P. J.


We concur:


/s/
BOULWARE EURIE, J.


/s/
MESIWALA, J.


11